IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| AMANDA MATTOCKS, | ) |
|     Plaintiff, | ) ) ) |
| v. | )    Case No. CIV-15-276-M |
| CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration, | ) ) ) ) ) |
|     Defendant. | ) |

**REPORT AND RECOMMENDATION**

Plaintiff, Amanda Mattocks, seeks judicial review of the Social Security Administration's denial of disability insurance benefits. This matter has been referred by United States District Judge Vicki Miles-LaGrange for proposed findings and recommendations. *See* 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons set forth below, it is recommended that the Commissioner's decision be affirmed.

**I.    Procedural Background**

This action arises out of Plaintiff's application for disability benefits filed on June 5, 2013. The Social Security Administration (SSA) denied the application initially and on reconsideration. Following a hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. *See* Administrative Record (AR) [Doc. No. 8], 14-26. The Appeals Council denied Plaintiff's request for review. AR 1-3. Thus, the decision of the ALJ became the final decision of the Commissioner. Plaintiff now seeks judicial review of that decision.

## II. The ALJ's Decision Issued September 30, 2014[1]

The ALJ followed the sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005) (explaining five-step sequential evaluations process); *see also* 20 C.F.R. § 404.1520. The ALJ first determined that Plaintiff had not engaged in substantial gainful activity since the alleged amended onset date, July 21, 2012. AR 17. At step two, the ALJ determined that "[f]rom July 21, 2012 through the date last insured, December 31, 2013" Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine, status-post 2010 lumbar interbody fusion procedure and 2011 placement of a dorsal column stimulator; degenerative changes to the cervical spine; impingement syndrome of the shoulders; degenerative joint disease of the left ankle; degenerative joint disease of the right knee; elbow tendinitis; fibromyalgia; and obesity. *Id*. At step three, the ALJ found that Plaintiff's impairments do not meet or medically equal any of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 19. The ALJ found other impairments were not severe including, as pertinent to Plaintiff's claims here, Plaintiff's "medically determinable impairment of an affective disorder . . . " AR 18.

The ALJ next determined Plaintiff's residual functional capacity (RFC). The ALJ found Plaintiff could perform sedentary work with additional physical and other non-exertional limitations. The ALJ did not include any mental limitations. AR 20.

---

[1] As set forth in the ALJ's decision, Plaintiff has filed several prior applications for both disability insurance benefits and supplemental security income. Plaintiff obtained a partially favorable decision in July 2012 for a closed period of disability from August 31, 2008 through September 21, 2011. AR 14-15. The SSA determined the benefits should cease due to medical improvement as of September 21, 2011. AR 15.

At step four, the ALJ found that Plaintiff could perform her past relevant work as a check cashier, bookkeeper, and administrative assistant. AR 24-25. The ALJ concluded, therefore, that Plaintiff was not disabled for purposes of the Social Security Act. AR 25-26.

## III. Plaintiff's Claims

Plaintiff brings the following claims in challenging the ALJ's decision: (1) the Appeals Council erred in its review of the treating physician opinion of Dr. Remondino; (2) the ALJ failed to consider side effects of Plaintiff's pain medication when assessing Plaintiff's RFC; (3) the RFC fails to include mental limitations even though the ALJ determined Plaintiff suffers from certain mild mental limitations; and (4) the ALJ's credibility finding is flawed because Plaintiff's daily activities are more limited than the ALJ indicated and Plaintiff's repeated attempts to treat pain bolster her credibility.

## IV. Standard of Review

Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *See Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (quotation omitted). A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). The court "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citations omitted). While the court considers whether the ALJ followed the applicable

rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quotations and citations omitted).

V. **Analysis**

   A. **The Appeals Council Did Not Err in its Review of the September 2014 Opinion of Dr. Remondino**

Plaintiff submitted to the Appeals Council a Medical Source Statement (MSS) that had been prepared by her treating physician, Dr. Remondino, on September 18, 2014, just a few weeks prior to the ALJ's decision. The Appeals Council stated that it considered the MSS submitted by Plaintiff but found "this information does not provide a basis for changing the [ALJ]'s decision." AR 2. The Appeals Council further stated that it considered whether the ALJ's findings were "contrary to the weight of the evidence of record." *Id*.

Plaintiff contends the Appeals Council failed to properly apply Social Security Ruling (SSR) 96-2p when it reviewed Dr. Remondino's MSS and she further contends the opinion should have been given "great weight." *See* Plaintiff's Brief at p. 18. The Commissioner concedes that the Appeals Council was required to consider this evidence, but argues the evidence "did not provide enlightenment regarding Plaintiff's condition during the relevant time period," i.e., during the period under review. *See* Commissioner's Brief at p. 15. The parties have failed to cite relevant legal authority addressing the degree to which the Appeals Council was required to state its reasons for finding that Dr. Remondino's MSS statement did not provide a basis for changing the ALJ's decision.

It is undisputed that Dr. Remondino's MSS qualifies as new, material and temporally relevant evidence the Appeals Council was required to consider. *See Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003); 20 C.F.R. § 404.970(b). Where, as here, the Appeals Council

expressly states it has considered the new evidence submitted, there is no error even if the order denying review includes no further discussion. *Martinez v. Barnhart*, 444 F.3d 1201, 1207-1208 (10th Cir. 2006); *see also Robinson v. Astrue*, 397 F. App'x 430, 432 (10th Cir. 2010) (Appeals Council's statement that additional evidence considered did "not provide a basis for changing the ALJ's decision" was sufficient under Tenth Circuit precedent and therefore, no error resulted from Appeals Council's failure to provide a "clear explanation" of reasons for finding that a two-page RFC determination by claimant's treating physician did not provide a basis for changing the ALJ's decision).[2]

When new evidence is accepted by the Appeals Council, it becomes part of the administrative record and must be considered by this Court in making the determination on judicial review as to whether substantial evidence supports the Commissioner's decision.

---

[2] In an unpublished decision, *Harper v. Astrue*, 428 F. App'x 823 (10th Cir. 2011), the court held that where *both* the ALJ and the Appeals Council failed to conduct a proper treating physician analysis, a remand was required. *Id*. at 827. There, as in this case, the claimant submitted additional treating physician evidence to the Appeals Council. Although the Appeals Council stated it considered the new evidence, it did so without discussion of that evidence. The Tenth Circuit determined that the Appeals Council's failure to conduct a specific analysis of the treating physician opinion required a remand. *Id*. ("Neither the ALJ nor the Appeals Council evaluated Dr. Farish's opinions using the [treating physician] analysis" and because "Dr. Farish imposed significant restrictions on [the claimant's] ability to work that were never discussed" a remand was required).

Subsequent to *Harper*, the Tenth Circuit noted in an unpublished decision that the question of whether the Appeals Council must conduct a treating physician analysis of a medical source statement submitted as new evidence on appeal "does not appear to be settled in this circuit, citing *Harper* and *Robinson*. *See Stills v. Astrue*, 476 F. App'x 159, 161-62 and n.1 (10th Cir. 2012). Notwithstanding this unpublished authority, the Court concludes that pursuant to *Martinez*, the Appeals Council did not err in failing to discuss with specificity Dr. Remondino's MSS. As the Court found in *Martinez*, nothing in the statutes or regulations requires such an analysis. *Id*., 444 F.3d at 1208; *see also Foy v. Barnhart*, 139 F. App'x 39, 42 (10th Cir. 2005) (accord); *cf Bolden v. Colvin*, No. 12-CV-0503-CVE-PJC, 2014 WL 63926 at *5 (N.D. Okla. Jan. 8, 2014) (unpublished op.) (addressing the "split of Tenth Circuit authority" and remanding because "it is unclear if the Court is permitted to analyze a possible treating physician opinion in the first instance when the Commissioner has not engaged in a treating physician analysis of new evidence accepted as part of the record by the Appeals Council").

*Martinez*, 444 F.3d at 1208. Plaintiff contends Dr. Remondino's MSS "gives a more detailed picture" because it addresses not just her ability to lift, but also her ability to sit and stand in an 8-hour workday. *See* Plaintiff's Brief at p. 17. Because the ALJ previously gave "great weight" to other opinion evidence of Dr. Remondino, *see* AR 24, Plaintiff seeks a reversal based on Dr. Remondino's opinion in September 2014 that Plaintiff could not complete a full 8-hour workday. *See* Plaintiff's Brief at p. 18.

As Plaintiff acknowledges, Plaintiff's date last insured was December 31, 2013 and Dr. Remondino's MSS was completed nearly nine months later. In his decision, the ALJ gave "great weight" to a 10-pound weight restriction Dr. Remondino placed on Plaintiff in November 2012, during the period under review and prior to the expiration of her insured status. AR 24. He also addressed Dr. Remondino's opinion that Plaintiff should be "'placed in the sedentary work category.'" *Id*. (*citing* Exhibit C4F at p. 7). The ALJ then found: "Dr. Remondino's restriction is based on his treatment relationship with the claimant, is consistent with her pain complaints and treatment history, and, again, accords with Dr. Dodd's opinion." *Id*.

In addition, the ALJ addressed other opinion evidence by Dr. Remondino that fell outside her date last insured. The ALJ stated as follows:

> In anticipation of the surgical removal of the claimant's dorsal column stimulator, which occurred in June 2014, Dr. Remondino authored a letter 'to whom it may concern' on May 5, 2014, in which he stated that the claimant was unable to perform the 20 hours per week of volunteer work that was required as a condition for her housing 'for at least the next two months,' because she needed surgery for her spine condition and removal of the stimulator. *The same day the May letter was written, Dr. Remondino released the claimant to 'regular work' with no restrictions other than the permanent 10-pound lifting limitation, even in anticipation of the removal of the stimulator.* An examination conducted on that date documented a host of complaints by the claimant, and Dr. Remondino noted that the claimant had a slightly antalgic gait and reduced range of motion in her back. Nevertheless, his findings clearly did not prompt him to opine that the claimant was incapable of performing all work.

6

AR 24 (citations omitted, emphasis added).³

On June 3, 2014, Plaintiff underwent the surgery to remove the stimulator. AR 791-93. Approximately three weeks later, Dr. Remondino opined that for a period of six weeks, Plaintiff would be temporarily totally disabled. AR 786.

Thereafter, in August 2014, Dr. Remondino again opined in a "to whom it may concern letter" that Plaintiff would not be able to perform the twenty hours per week of volunteer work for her housing "until further notice" due to "persistent thoracic, back pain and spasms extending into both legs at this time . . . ." AR 964. Plaintiff faults the ALJ for not discussing the June and August opinions of Dr. Remondino and further claims the September 2014 MSS opinion by Dr. Remondino requires a remand.

The Court finds no error by the ALJ or Appeals Council with respect to the opinion evidence cited by Plaintiff. Evidence that post-dates the expiration of Plaintiff's insured status may be considered to the extent it sheds light on the nature and severity of a claimant's condition during the relevant time period. *Baca v. Dep't. of Health & Human Servs.*, 5 F.3d 476, 479 (10th Cir. 1993); *see also Hamlin v. Barnhart*, 365 F.3d 1208, 1217 (10th Cir. 2004). Nonetheless, Plaintiff must establish that she was disabled prior to the expiration of her insured status. *See* 20 C.F.R. § 404.131; *Henrie v. United States Dep't of Health & Human Servs.*, 13 F.3d 359, 360 (10th Cir. 1993).

As set forth, above, Plaintiff's date last insured is December 31, 2013. The ALJ considered one opinion by Dr. Remondino issued after the expiration of Plaintiff's insured status

---

³ The inconsistency in Dr. Remondino's opinion is proper grounds for discounting that opinion. *See DeFalco-Miller v. Colvin*, 520 F. App'x 741, 746 (10th Cir. 2013) (ALJ did not err in giving little weight to treating physician opinion where the physician's recommended limitations were inconsistent with his own treatment notes and course of treatment).

– the opinion issued in May 2015. He explained the reasons why that opinion did not impact his RFC determination. AR 24.

The subsequent opinion evidence post-dates Plaintiff's surgery on June 3 2014 to remove the stimulator. The June 23, 2014 finding by Dr. Remondino that Plaintiff would be temporally totally disabled for a six-week period following that surgery clearly related to the fact of her surgery. It did not relate to Plaintiff's condition during the relevant time period.

Similarly, the September 2016 MSS did not include medical findings for the time period during which Plaintiff was insured. Nothing set forth in the MSS indicates it was retrospective. *Compare Villalobos v. Colvin,* 544 F. App'x 793, 796 (10th Cir. 2013) (refusing to remand based on a doctor's opinion submitted only to the Appeals Council, where the doctor's diagnosis was not retrospective). The MSS, therefore, is not substantial evidence that Plaintiff was disabled prior to the expiration of her insured status. *See, e.g., Candelario v. Barnhart*, 166 F. App'x 379, 382 (10th Cir. 2006) (because disability must be established prior to the claimant's date last insured, "the only evidence relevant to his claim is that which pertains to his condition on or before that date"). For these reasons, Plaintiff's first claim of error lacks merit and should be denied.

**B. The ALJ's RFC Determination is Proper and Supported by Substantial Evidence**

Plaintiff next seeks reversal because the ALJ did not include any limitations in the RFC concerning Plaintiff's mental limitations "that exist as a result of pain and/or side effects of

medication." *See* Plaintiff's Brief at p. 19. Plaintiff faults the ALJ for only addressing the mental limitations "from a mental health perspective." *Id.*[4]

In support of this claim, Plaintiff references the following evidence: her own testimony at the hearing before the ALJ, her statements in the adult function report, and a statement included in Dr. Remondino's September 2014 MSS. While the testimony and other evidence cited by Plaintiff relate to her subjective complaints, Plaintiff does not identify any findings by any medical provider as to functional limitations resulting from the side effects of her medication during the period of her insured status. Indeed the only reference to side effects from medication made by any medical provider is the statement in Dr. Remondino's MSS that Percocet causes "sedation." AR 966. Dr. Remondino does not identify, however, the degree of any functional limitation as a result of the sedation. *See id.* More importantly, as discussed above, Dr. Remondino's MSS falls outside the period under review.

The ALJ addressed Plaintiff's testimony regarding the side effects of her medication: "The claimant testified that she participates in pain management and takes medications for her symptoms; however, she stated that treatment had provided limited relief, and further, her medications cause drowsiness and foggy thinking . . . ." AR 21.[5] But the ALJ discounted Plaintiff's subjective complaints in assessing her credibility. AR 21-24.

---

[4] At step two of the sequential evaluation process, the ALJ did not find Plaintiff suffers from any severe mental impairment. *See* AR 18 ("The claimant's medically determinable mental impairment of an affective disorder did not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and was therefore not severe."). And at step three of the sequential evaluation process, the ALJ found that Plaintiff's affective disorder "caused no limitations in social functioning and only mild limitations in activities of daily living and concentration, persistence, and pace." AR 19. Plaintiff does not challenge any of these findings.

[5] At the hearing, Plaintiff testified as follows:

. . . cont'd . . .

9

Plaintiff is correct that when determining RFC, an ALJ "must consider the combined effects of *all* medically determinable impairments, whether severe or not." *Wells v. Colvin*, 727 F.3d 1061, 1069 (10th Cir. 2013). Consequently, a finding at step two that a mental impairment is not severe "does not permit the ALJ simply to disregard those impairments when assessing a claimant's RFC and making conclusions at steps four and five." *Id*. at 1068-69.

But here, the ALJ did not improperly rely solely on the step-two finding to support his RFC determination. The ALJ stated that he considered the entire record when assessing Plaintiff's RFC and the practice in the Tenth Circuit is to take the ALJ at his word. *See Wells*, 561 F.3d at 1070; *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005). The ALJ relied on the opinions of the state agency consultants concluding that Plaintiff's mental impairments were nonsevere and those opinions constitute substantial evidence supporting the ALJ's omission of any mental limitation in the RFC. *See, e.g., Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007). Plaintiff does not cite any specific objective medical evidence from an acceptable medical source, other medical source or otherwise concerning her mental limitations that contradict those findings in any way. And she does not cite any treatment records reflecting any

---

Q. Okay. Do you have any side effects from those medications that you take?

A. Yes. It makes me very groggy and sometimes foggy brained. I don't know if it depends on what you've eaten or what it is, one pill might be stronger than the other, may completely knock me out. Or another pill may not feel much effect from it at all.

Q. Okay, so when you're talking about the groggy and foggy brain, is that interfering with your ability to concentrate on doing certain tasks?

A. Yeah, and I've said it to people many times, I'm just really drugged up and I can't think straight.

AR 56.

complaints about the side effects of her medication. *Compare Burrell v. Colvin*, 605 F. App'x 691, 692-93 (10th Cir. 2015) (affirming RFC that did not include limitations resulting from side effects of medications where the claimant's alleged side effects were "medically indeterminable"); *see also Humphreys v. Colvin*, No. CIV-13-0098-HE, 2014 WL 1270748 (W.D. Okla. March 25, 2014 ) (unpublished op.) (affirming decision of the ALJ and rejecting argument that RFC should have included limitations based on lapses in concentration, drowsiness, dizziness, nausea and constipation – all side effects of medications – where ALJ analyzed at length evidence regarding the claimant's functional capacity and the credibility of the claimant's subjective complaints).

Instead, Plaintiff relies only upon her own testimony and subjective complaints. But, as discussed infra, the ALJ thoroughly addressed his reasons for discounting Plaintiff's credibility. Under these circumstances, substantial evidence supports the ALJ's determination, and this Court may not reweigh the evidence or substitute [its] judgment for that of the agency. Therefore, even if the ALJ erred by not specifically stating reasons for not including limitations related to side effects of medication in the RFC, any such error is harmless. *See, e.g., Alvey v. Colvin*, 536 F. App'x 792, 794 (10th Cir. 2013) (an "ALJ's failure to conduct a . . . particularized assessment of mental functions at step four [is] harmless error [when] [t]here is no substantial evidence that would allow a reasonable administrative factfinder to include any mental limitations in [the] RFC.").

Plaintiff also faults the ALJ for omitt[ing] any mental limitations from the RFC despite finding there were mild limitations." *See* Plaintiff's Brief at p. 20. For purposes of rating the severity of Plaintiff's mental impairments at steps two and three of the sequential evaluation, the ALJ gave ""significant weight" to the findings and opinions of the independent and state agency

psychologist consultants. AR 18. The ALJ further stated he relied in part on Plaintiff's own statements to conclude that she suffers mild limitations in activities of daily living and concentration, persistence and pace. AR 19. Based on Plaintiff's additional testimony, he found that notwithstanding these mild limitations, Plaintiff could "adapt to changes in routine," was "able to follow written and oral instructions" and "was able to engage in activities that entailed some ability to concentrate[.]" *Id.*

It is well-established that the mental limitations identified at steps two and three are not a residual functional capacity assessment. *Wells*, 727 F.3d at 1069. And Plaintiff fails "to identify a requirement that step three findings concerning the listings be incorporated into the RFC determination used in steps four and five*." DeFalco-Miller*, 520 F. App'x at 747-48; *see also Suttles v. Colvin*, 543 F. App'x 824, 827 (10th Cir. 2013) (rejecting claim that ALJ erred by omitting from the RFC assessment a mild limitation found at step two regarding concentration, persistence or pace and stating that the Tenth Circuit has "repeatedly held, albeit in unpublished opinions, that mental limitations noted in the threshold inquiry at steps two and three do not apply at later steps") (citations omitted). Indeed, Plaintiff cites no law to support her claim. *See* Plaintiff's Brief at p. 20.

Moreover, the ALJ's step-three finding that Plaintiff suffers certain mild limitations, "is neither a medical fact nor nonmedical evidence." *De Falco-Miller*, 520 F. App'x at 748; *see also* SSR 96-8p, 1996 WL 374184 at *7 (requiring RFC assessment to cite specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g. daily activities)). Plaintiff does not cite any record evidence to support her claim but relies only on the step-three findings. Plaintiff's claim, therefore, lacks merit and should be denied.

## C. The ALJ's Credibility Determination is Supported by Substantial Evidence

As her final claim of error, Plaintiff challenges the ALJ's credibility determination. Credibility determinations by the trier of fact are given great deference. As the Tenth Circuit has acknowledged:

> The ALJ enjoys an institutional advantage in making [credibility determinations]. Not only does an ALJ see far more social security cases than do appellate judges, [the ALJ] is uniquely able to observe the demeanor and gauge the physical abilities of the claimant in a direct and unmediated fashion.

*White v. Barnhart*, 287 F.3d 903, 910 (10th Cir. 2002). When making a credibility determination, the ALJ must give specific reasons that are closely linked to substantial evidence. *See Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995). "[C]ommon sense, not technical perfection, is [the] guide" of a reviewing court. *Keyes Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012).

According to Plaintiff, the evidence the ALJ relied upon to establish her daily activities "actually show[s] that [Plaintiff] was quite limited in what her daily activities were." *See* Plaintiff's Brief at p. 21 (*citing* AR 213-221). Plaintiff claims that "[t]hese very simple limited activities in no way suggest that [she] 'was at least capable of performing sedentary work.'" *Id*. at p. 22 (*citing* AR 22).

The ALJ addressed Plaintiff's daily activities including her ability to live alone, cook, shop, drive, perform light household chores, shop and manage her finances. AR 19. He expressly noted that "her concentration varied with her pain level, and that she poorly handled stress," but that Plaintiff "acknowledged that she could adapt to changes in routine and that she was able to follow written and oral instructions." AR 19. With respect to her ability to concentrate, the ALJ found that Plaintiff "was able to engage in activities that entailed some ability to concentrate, such as driving, shopping, managing a checkbook, and playing video

games. *Id*. (citation omitted). The ALJ properly relied on these daily activities in making a credibility assessment. *See Newbold v. Colvin*, 718 F.3d 1257, 1267 (10th Cir. 2013). To the extent, as Plaintiff argues, her daily activities may also suggest she is more limited in her functional abilities, this Court cannot reweigh the evidence or substitute its judgment for that of the ALJ.

Plaintiff also claims that "[t]he overall amount of medical treatment sought by [her] should also bolster her credibility and reports of pain." *See* Plaintiff's Brief at p. 22. She specifically references the fact that she "underwent numerous injections, pain management, a three level lumbar spine fusion, the implantation of a dorsal column stimulator, and ultimately the removal of the dorsal column stimulator." *Id*. In making this argument, Plaintiff does not refer to any specific findings of the ALJ or cite to any specific record evidence. In fact, a review of the ALJ's decision demonstrates that he thoroughly addressed all of Plaintiff's medical treatment in relation to her allegations of pain and provided specific reasons for discounting her subjective complaints of pain. AR 22-24. As just one example, the ALJ addressed Plaintiff's low back pain, her lumbar fusion history and the spinal cord stimulator implant. AR 22. But the ALJ found that Plaintiff's gait and overall musculoskeletal strength typically "were normal during the relevant period" and that "diagnostic testing did not fully explain her complaints." *Id*. He also found that an October 2012 CT scan of the thoracic spine was normal, a lumbar study performed at the same time was "unremarkable", there was "no indication of any acute process" and "there was no sign of spinal cord compromise at any level." *Id*. Plaintiff does not address any of this evidence in challenging the ALJ's credibility analysis or the other substantial evidence discussed by the ALJ with respect to the credibility analysis.

Without further development, Plaintiff's credibility challenge as raised simply invites this Court to reweigh the evidence – a function not permitted on judicial review. Because "substantial evidence supports the ALJ's credibility determination and the correct legal standards were applied," *Newbold*, 718 F.3d at 1268, Plaintiff's claim of error should be denied.

## RECOMMENDATION

It is recommended that the Commissioner's decision be affirmed.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any objection must be filed with the Clerk of the District Court by April 29, 2016. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). Failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED this 15th day of April, 2016.

_____
BERNARD M. JONES
UNITED STATES MAGISTRATE JUDGE